## Plucker *v.* Miller, Appellant.

*Master and servant—Employment—Evidence—Charge.*

In an action to recover commissions for procuring a contract under plaintiff's employment as a solicitor of contracts on a commission basis, where the evidence is conflicting as to the date when the plaintiff left the employment of a competitor of defendant and entered the employment of defendant, it is error for the court to use language which will tend to minimize the importance of the date of the execution of the contract, for if the contract was executed at the time alleged by defendant, plaintiff was at that time working for defendant's competitor, and could not have procured the contract for defendant.

Argued Oct. 12, 1904. Appeal, No. 268, Oct. T., 1903, by defendant, from judgment of C. P. No. 5, Phila. Co., Dec. T., 1902, No. 703, on verdict for plaintiff in case of Jacob J. Plucker v. Joseph S. Miller. Before RICE, P. J., BEAVER, ORLADY, SMITH, PORTER, MORRISON and HENDERSON, JJ. Reversed.

Assumpsit to recover commissions for procuring a contract. Before DAVIS, J.

The facts are stated in the opinion of the Superior Court.

The court charged in part as follows :

The plaintiff claims from the defendant the sum of $350, with interest, as commission which he has earned, as he alleges, for a contract which he brought to the defendant for furnishing tiling and other material for the building operation

which you have heard referred. to.  If you are convinced from that testimony that that contract was brought to the defendant by the plaintiff, Mr. Plucker, then your verdict must be for the plaintiff.  If, from the testimony, you find that the contract for the work came to the defendant through Mr. Hawkins, or through anybody other than the plaintiff, then the plaintiff cannot recover, and your verdict must be for the defendant. The issue, therefore, is a very narrow one—did Mr. Plucker secure this contract for the defendant ?  If he did, he is entitled to his commission.  If he did not, he is not so entitled.

[The execution of these contracts does not enter into this case in any way whatsoever, only in so far as they may explain to your satisfaction, if they do so explain, the delay, if there was any delay, upon the part of Mr. Plucker in demanding from the defendant the commission which he now claims to be due. If the defendant incurred any liability to the plaintiff it was not at the time of the execution of the contracts, but at the time the work was brought to the defendant.  In other words, if Plucker had brought work as he alleges he did, in March, and the contracts were not ·signed until months after the date of the execution of the contract, that would have nothing to· do with his right to recover.] [1]

Now, it is conceded that Plucker had been in the employment of Hall, and that, whilst in the employment of Hall, he had striven to get this identical contract for Hall.  He severed his connection with Hall, he says, on the 9th of March.  The contention of the defendant is that he severed that connection upon the 16th of March.  Then again, Mr. Hoffman tells you that, being interested in Mr. Plucker, he did what he could to bring the contract to Mr. Plucker's new employer, the defendant in this suit.  Mr. Plucker testifies that he alone secured this contract for the defendant, and that before he did so Mr. Hall had given up, as I remember it, all hope of receiving the contract, and that was true to a large extent also of the defendant, who had been trying to get the contract when Mr. Plucker entered defendant's employ.  It is admitted that this contract was secured very near the time of the severance of plaintiff's employment with Matthew Hall, which immediately preceded, or after a short interval, his employment by the defendant.  Plaintiff claims that he left Hall on the 9th and im-

mediately entered the employment of the defendant.    The defendant claims that he left Hall on the 16th.. Mr. Hawkins, the manager of the defendant, testifies that he met Mr. Plucker on Monday, March 18, and that Plucker told him he had just left Hall's employ and that is corroborated by Mr. Holt, who was with Mr. Hawkins at the time he met Mr. Plucker.    Then there is another piece of evidence which you may consider important, if you see fit to do so, and that is, that Mr. Plucker, when handed a certain check dated March 16, in response to a question by Mr. Warwick, answered " Yes, I guess that is the check where Hall, instead of paying me a commission, raised my salary from $25 to $30." He subsequently explained that by telling you that while he received the check and kept the money, he did not receive it as salary, but on account of commission; that he saw Mr. Hall and demanded $200 for commissions which had been promised to him, but that he did not receive the $200 and kept the $30.00 on account of those commissions. [The jury has a right to take into consideration not only the oral testimony of the witnesses, and the written evidence, but, as well, the corroborating circumstances, and the jury may consider whether, at this time, Mr. Plucker may have had a well-defined reason for leaving the employ of a gentleman who, he says, owed him $200 and refused to pay it.    Immediately, thereon, you have another piece of testimony which dovetails, it would seem, with the foregoing, but which is for your consideration alone, and that is the testimony of the bookkeeper. The bookkeeper testifies that Mr. Plucker settled his business with Matthew Hall on March 16.    March 18, is the date fixed by Mr. Hawkins and Mr. Holt for the meeting with Mr. Plucker; that was Monday, two days afterwards. This check, dated the 16th, is presented to him, and he testified in reference to that check that it was paid to him on Saturday afternoon for a week's wages ending March 16 ; that is the testimony of Lowry, the bookkeeper.' This witness also says that at that time Mr. Plucker's wages were $30.00, having previously been $25.00 a week, and that the check was handed to him with an envelope containing $3.00 for the expenses for the week; he says that he, individually, handed plaintiff this check and this envelope.    In cross-examination, he reiterates that he paid the money.    He says " I handed him this," indicating the

check, and he also says in response to another question in cross-examination, " He didn't leave two weeks before that time."]
[2] Now these are questions for you to take into consideration.

Verdict and judgment for plaintiff $375.38. Defendant appealed.

*Errors assigned,* among others, were (1, 2) portions of charge as above, quoting them; and (5) that the charge as a whole was insufficient and misleading, quoting the whole charge.

*Charles F. Warwick,* with him *J. Edgar Butler,* for appellant. —The date of the execution of the contract between Hause and defendant, Miller, was of the very essence of this case, because if executed at the time alleged by defendant, plaintiff was, at that time, working for a rival of defendant and admittedly could not have secured this contract to defendant. The court instructed the jury that the execution of this contract was not material.

The charge as a whole was an inadequate presentation of the evidence and the questions involved : Herstine v. R. R. Co., 151 Pa. 244 ; Fineberg v. Pass. Ry. Co., 182 Pa. 97 ; Lerch v. Bard, 177 Pa. 197 ; Pennsylvania Canal Co. v. Harris, 101 Pa. 80 ; Tietz v. Traction Co., 169 Pa. 516 ; Urias v. Penna. R. R. Co., 152 Pa. 326 ; Hess v. Williamsport, etc., R. R. Co., 181 Pa. 492; Richards v. Willard, 176 Pa. 181.

*Wayne P. Rambo,* with him *Ormond Rambo,* for appellee, cited as to the sufficiency of the charge : Com. v. Kaiser, 184 Pa. 493 ; McCosh v. Myers, 25 Pa. Superior Ct. 61 ; Kehoe v. Traction Co., 187 Pa. 474; Com. v. Zappe, 153 Pa. 498 ; Krepps v. Carlisle, 157 Pa. 358 ; Com. v. Kay, 14 Pa. Superior Ct. 376 ; Taylor v. Burrell, 7 Pa. Superior Ct., 461 ; Trust Co. v. Philadelphia, 202 Pa. 78 ; Kuntz v. Railroad Co., 206 Pa. 162 ; Crawford v. Wittish, 4 Pa. Superior Ct. 585 ; Brown v. Montgomery, 21 Pa. Superior Ct. 262, 268 ; Peirson v. Duncan, 162 Pa. 187.

OPINION BY BEAVER, November 21, 1904 :
Plaintiff claimed from the defendant a commission for se-

curing a contract for materials to be used in and about the erection of a number of houses, for the delivery of which the defendant entered into a written contract with the builder, Hause. The plaintiff alleged that he had secured the contract from Hause. The defendant, on the other hand, denied that the plaintiff had anything whatever to do with it; that the contract was closed and the written agreement, which was the evidence thereof, was signed before the plaintiff came into his employ and while he, the plaintiff, was in the employ of a rival in trade of the defendant.

We quite agree with the trial judge in the court below that the question involved in the case was purely one of fact and, in closing the charge, by way of summary, he very properly says:

" After all, the question comes back to what I suggested at first—did or did not Plucker get this contract for the defendant? He says he did; the defendant denies it. He says he left Matthew Hall on a certain day; the defendant says he left on a different day. It is for you to find when this contract was awarded. There is testimony to the effect that it was awarded earlier than the date that plaintiff left Hall's employ. One witness says it was as far back as February and Mr. Hawkins testifies that he, in response to a circular, had sent in an estimate with specifications, back in February, and the gentleman who was to have been the superintendent testifies to you that the contract was given to the defendant because of the action of Mr. Hawkins and not because of Mr. Plucker's efforts.

" Now that is rather a synopsis of the testimony than a thorough review of it. Of course, I cannot go over in detail all that the witnesses have said. You have heard all the testimony, and it is for you to determine whether the plaintiff is entitled to recover or not."

We think the case was clearly one for the jury and that the point of charge of the defendant—that " under all the evidence in this case your verdict must be for the defendant "—was properly negatived. The fourth specification of error must, therefore, also fail, as it is based upon the third which contains the point above referred to.

We see nothing erroneous in what is complained of in the

second specification of error. It is simply a plain presentation of facts which was entirely impartial and made as much for defendant as the plaintiff.

The pivotal point in the case, as it seems to us, was, when did the plaintiff enter the employ of the defendant? Was it on March 9, as he (the plaintiff) alleges, or was it after March 16, when Hall's bookkeeper testifies he paid the plaintiff his last wages for the week ending that date? Was it on March 18, the date fixed by Hawkins, who was the foreman of the defendant, or March 20, or later, as alleged by the defendant? Between the said dates as it is alleged by the defendant, the written agreement with Hause was actually signed and the contract finally closed. The date of the execution of this written agreement, therefore, became of the first importance. If it were signed on March 15, as alleged by Miller, in which he is partially corroborated by the subscribing witnesses, Lynch and McFarland, it would have been prior to Plucker's employment, as claimed by defendant; or, if the agreement had not been signed until toward the last of April, as claimed by the plaintiff, it would have been subsequent to his employment, as testified to by the defendant's witnesses. The time of the execution of the written agreement was, therefore, a vital point in the case and was, in a measure, decisive of it. In this view of the case, we think the portion of the charge assigned for error in the first specification was possibly misleading.

The court said : " The execution of these contracts does not enter into the case in any way whatever, only in so far as they may explain to your satisfaction, if they do so explain, the delay, if there was any delay, upon the part of Mr. Plucker in demanding from the defendant the commission which he now claims to be due. If the defendant incurred any liability to the plaintiff, it was not at the time of the execution of the contracts, but at the time the work was brought to defendant. In other words, if Plucker had brought work, as he alleges he did, in March, and the contracts were not signed until months after the date of the execution of the contract, that would have nothing to do with his right to recover." The importance of the date of the execution of the written agreements was, therefore, greatly minimized by what the court says in regard to it

and, in commenting further upon it, only the time mentioned by the plaintiff as the date of the execution of it is referred to by the court, when he says : " In other words, if Plucker had brought work, as he alleges he did, in March, and the contracts were not signed until months after the date of the execution of the contract, that would have nothing to do with his right to recover." If this had been followed by something like this : If, on the other hand, the written agreements were signed on March 15, as alleged by the defendant,—and Plucker's employment did not begin until after his employment with Hall as testified to by Hall's bookkeeper, ceased,—it would have been practically impossible for him to have secured the contract for which he now claims a commission,—the whole case would have been adequately and impartially presented. As it is, this portion of the charge is open to the objection urged to the charge as a whole in the fifth assignment of error.

In this view of the case, we are compelled to sustain the first assignment of error and also the fifth, so far as it relates to this portion of the charge. In all other respects, we think the charge was full, fair and adequate.

Judgment reversed and a new venire awarded.